UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
TRUSTEES OF THE PLUMBERS LOCAL UNION
NO. 1 WELFARE FUND, ADDITIONAL SECURITY
BENEFIT FUND, VACATION & HOLIDAY FUND,
TRADE EDUCATION FUND AND 401(k) SAVINGS
PLAN, TRUSTEES OF THE PLUMBERS AND
PIPEFITTERS NATIONAL PENSION FUND,
TRUSTEES OF THE INTERNATIONAL TRAINING
FUND and GEORGE W. REILLY, as Business Manager
of LOCAL UNION NO. 1 OF THE UNITED ASSOCIATION
OF JOURNEYMEN AND APPRENTICES OF THE
PLUMBING AND PIPEFITTING INDUSTRY
OF THE UNITED STATES AND CANADA,

                      Plaintiffs,            **MEMORANDUM
                                                        and ORDER**

  — against —

                                                         07-CV-1740 (SLT)(JO)

RIVERDALE ASSOCIATES, LLC, A.S.A.
OF NEW YORK, INC., WINGATE MECHANICAL
and WILLIAM JOHNSTON a/k/a WILLIAM JOHNSON,
in his official capacity as Chief Executive Officer of
A.S.A. OF NEW YORK, INC, in his individual capacity
and as fiduciary,

                      Defendants.
-------------------------------------------------------------------------------X
**TOWNES, United States District Judge:**

        Defendants, Riverdale Associates, LLC, A.S.A. of New York, Inc. and William Johnston (hereinafter, "Movants"), seek a preliminary injunction to stay an arbitration currently scheduled for July 3, 2007. Movants principally argue that plaintiffs have waived the right to arbitrate by bringing this action, but also contend that the arbitration will be unfair to them in other respects. For the reasons set forth below, Movants' application for a preliminary injunction is denied.

## FACTS

The plaintiffs in this action are the trustees of various ERISA plans (the "Funds"), which are organized and operated pursuant to collective bargaining agreements ("CBAs") of Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("Local 1"), and a representative of Local Union No. 1 – Business Manager George W. Reilly. Defendants Riverdale Associates, A.S.A. and Wingate (collectively, the "Contractors") are currently members of the Association of Contracting Plumbers of the City of New York (the "Association"), and are thereby bound by one or more of the CBAs. These CBAs include two agreements between the Union and the Association: the Building Trades Agreement (covering new construction) and an MES Agreement (covering service, repair or replacement work). However, the Association also has a "Residential Agreement" with the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union"), which apparently provides favorable conditions for contractors seeking to compete in the residential plumbing market. Defendant William Johnston is an officer and shareholder of A.S.A. and a "member" of Riverdale Associates. Affidavit of William Johnston, dated June 13, 2007 (the "Johnston Affidavit"), at ¶ 2.

The Johnston Affidavit details a dispute which has developed between Local 1 and the Movants. Johnston alleges that on or about September 15, 2006, he received a copy of a letter from James Cahill, International Representative of the Union, advising George W. Reilly, the Business Manager of Local 1, that Local 1's signatory contractors could "re-bid all plumbing work for all buildings at the L&M Equities project, located at 5th Street, Williamsburgh" under the terms of the Residential Agreement, upon certain conditions. *See* Johnston Affidavit at ¶ 9; Ex. 5. (The Johnston Affidavit indicates that the L & M Equities project is also known as the

"Kent Avenue Project"). After A.S.A. bid the job in reliance on Cahill's September 15 letter, Johnston received a letter from Cahill dated October 26, 2006, which allegedly modified the conditions set forth in the early letter. *See* Johnston Affidavit at ¶10, Ex. 6. Johnston informed Cahill that he would not agree to the modifications, *see* Johnston Affidavit at ¶11, and A.S.A. began work on the Kent Avenue Project in November 2006.

On November 30, 2006 – shortly after Movants began work on the Kent Avenue Project – the Association brought suit in United States District Court for the Southern District of New York against Cahill, Johnston and A.S.A., alleging that these parties conspired to permit Movants to bid the project at the lower residential rate. *See* Ex. 7 to the Johnston Affidavit. Gary Hamilton, another International Representative of the Union, apparently mediated a settlement of that dispute, the terms of which are reflected in a letter from Hamilton to Johnston dated February 12, 2007. *See* Ex. 8 to the Johnston Affidavit. Johnston alleges, and this Court has confirmed, that the Southern District action was voluntarily dismissed on April 16, 2007.

After settlement of the Southern District action was reached but before it was formally dismissed, Riverdale received correspondence from Marshall and Moss Payroll Compliance Services, LLC, requesting an audit of Riverdale's payroll records for June 1, 2004, to the present. Exhibit 9 to the Johnston Affidavit suggests that someone at Riverdale agreed to begin the audit on April 19, 2007. When that audit did not take place, plaintiffs commenced the instant action. This action seeks to audit Riverdale's books for the period from May 2001 to the present, but alleges that certain contributions are due and owing as a result of work performed by individual employees of the "Riverdale Defendants," which includes Riverdale Associates, A.S.A. and Wingate. Although the complaint is not too specific, plaintiffs represented at oral argument that some of the contributions being sought in this action may relate to work performed by A.S.A. employees on the Kent Avenue Project.

3

On May 31, 2007, Johnston received notification that Local 1 was requesting his presence at a Executive Committee Hearing on June 8, 2007, to answer certain unspecified questions relating to work on the Kent Avenue Project. *See* Ex. 10 to the Johnston Affidavit. That letter stated that the hearing was the first step in an arbitration process. Johnston requested a one-month extension of that hearing, alleging that documents he needed at the hearing are currently being audited pursuant to Magistrate Judge Orenstein's directions. *See* Ex. 11 to the Johnston Affidavit. The Executive Committee Hearing was adjourned, and is currently scheduled for July 3, 2007.

It is not entirely clear what issues will be discussed at the Executive Committee Hearing. In a letter to Johnston dated May 31, 2007, the Executive Committee indicates that it will be asking questions concerning compliance with certain sections of the CBA governing the Kent Avenue Project. Some of these sections have to do with the payment of wages and benefits. *See* Johnston Affidavit at ¶ 35. However, in their responsive papers, plaintiffs state that the arbitration has little to do with the allegations of the complaint in this action. *See* Declaration of Michael J. D'Angelo, at ¶¶ 15-26. At oral argument, Movants' counsel conceded that some of the issues in the arbitration are not at all related to this action. However, he represents that there is some overlap between the issues to be discussed at the Executive Committee Hearing and the issues in this case. *See* Affidavit of Steven B. Horowitz, Esq., in Reply to Opposition of Plaintiff.

Although Movants acknowledge that the relevant CBAs permit arbitration of the sort being initiated by the Executive Committee Hearing, Movants now seek a permanent injunction staying this arbitration. In their papers, Movants principally argue that plaintiffs have impliedly waived their right to arbitration by pursuing this action. However, at oral argument,

4

Movants did not mention this waiver argument, relying instead on an assertion that the arbitration will not be impartial. As discussed below, neither argument has merit.

## *DISCUSSION*

To obtain a preliminary injunction, the moving party must show "that 1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Otokoyama Co. Ltd. v. Wine of Japan Imp., Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). As Movants themselves acknowledge, the Second Circuit has a "strong policy favoring arbitration," and it is a "rare case" in which that policy is outwieghed. *Zwitserse Maatschappij Van Levensverzekering en Lijfrente, N.V. v. ABN Int'l Capital Mkts. Corp.*, 996 F.2d 1478, 1480 (2d Cir. 1993). However, a party may waive its right to arbitrate in one of two ways:

> by expressly indicating that it wishes to resolve its claims before a court, *Gilmore v. Shearson/Amer. Express Inc., 811 F.2d 108, 112 (2d Cir. 1987)*, or by impliedly waiving its right to enforce a contractual arbitration clause by 'engag[ing] in protracted litigation that results in prejudice to the opposing party.' *S & R Co. of Kingston v. Latona Trucking,* 159 F.3d 80, 83 (2d Cir. 1998) (citations omitted); *see also Standard Microsystems Corp. v. Dahod*, 84 F. Supp. 2d 396, 398 (E.D.N.Y. 2000).

*DeGraziano v. Verizon Commc'ns., Inc*, 325 F. Supp. 2d 238, 244 (E.D.N.Y. 2004). As defined by the Second Circuit, prejudice "refers to the inherent unfairness – in terms of delay, expense, or damage to a party's legal position – that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 130 (2d Cir. 1997). However, "[i]ncurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." *PPG Indus., Inc. v.*

5

*Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) (citing *Doctor's Assocs.,*107 F.3d at 134).

Movants do not allege that plaintiffs have expressly waived the right to arbitrate, but suggest that they have impliedly done so. As noted in *DeGraziano*, the determination of when a party has impliedly waived the right to arbitration via protracted litigation is "fact specific," with factors to consider including:

> (1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of any litigation (including exchanges of pleadings, and substantive motions and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, and expense.

325 F. Supp. 2d at 244 (citing *PPG Indus.*, 128 F.3d at 107-09). However, these factors are not exclusive. As the Second Circuit has emphasized:

> There is no bright-line rule . . . for determining when a party has waived his right to arbitration: the determination of waiver depends on *the particular facts of each case*.

*In re: Crysen/Montenay Energy Co.*, 226 F.3d 160, 163 (2d Cir. 2000) (emphasis in original) (quoting *PPG Indus.*, 128 F.3d at 107-08).

*PPG Industries* lists instances in which the Second Circuit has found that a party waived its right to arbitrate: where a party engaged in extensive pre-trial discovery and forced its adversary to respond to substantive motions; delayed invoking arbitration rights by filing multiple appeals and substantive motions while an adversary incurred unnecessary delay and expense; or engaged in discovery procedures not available in arbitration. *PPG Indus.*, 128 F.3d at 107. Movants attempt to massage the facts of this case to fit into one of these categories is unavailing. This case has just begun, there have been no dispositive motions and, unless one

6

counts the ongoing audit to which plaintiffs had rights under the CBA, no discovery whatsoever. Movants are, therefore, highly unlikely to succeed on the merits.

Movants also allege that the arbitration itself will not be impartial and will be unfair to them in several respects. Since the arbitration has not yet begun, Movants' allegations of partiality and unfairness are entirely speculative. Moreover, Movants' counsel tacitly acknowledged at oral argument that there exists a legal mechanism for contesting biased or unfair arbitration proceedings. Indeed, Movants' counsel requested that this Court take jurisdiction of any proceedings brought in this Court to enforce the arbitration, which this Court declined to do. The fact that there is a legal remedy which Movants can pursue if the arbitration process proves biased or unfair undercuts Movants' claim of irreparable harm. Accordingly, Movants' allegations of partiality and unfairness in the arbitration process do not provide an adequate basis for injunctive relief.

## *CONCLUSION*

For the reasons set forth above, Movants' application for a preliminary injunction staying the arbitration currently scheduled for July 3, 2007, is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
       June 28, 2007

_____
SANDRA L. TOWNES
United States District Judge